## MURRAY v. CITY OF POCATELLO.

(Circuit Court of Appeals, Ninth Circuit. May 11, 1914.)

### No. 2345.

WATERS AND WATER COURSES (§ 188*)—WATER COMPANIES—ANNULMENT OF FRANCHISE.

 Complainant city (then town) in 1892 by ordinance granted a franchise for 50 years to defendant and others, whose interests he afterwards acquired, to construct and maintain waterworks to supply the town and its inhabitants with water "to be conveyed from creeks * * * known as Mink and Gibson Jack creeks," and to be in quantity sufficient to supply both the public and private uses of the citizens of the town and of pure and healthful quality. Afterward rates were agreed upon and established. In 1901, the town having become a city and largely increased in population, an ordinance was passed reciting that, the then supply of water having become inadequate, defendant agreed "to bring in the waters of Mink creek" and to make all extensions warranted by the growth of the city, involving a large expenditure of money, in consideration of which the city confirmed the previous grant, agreed to rent a certain number of additional hydrants, that the prevailing rates should not be changed for five years, and only at intervals of five years thereafter, and then only on specified conditions, and that the city would not grant a more favorable franchise to another nor own a water system of its own until it had offered to purchase defendant's system at a price to be fixed as therein provided. The ordinance was accepted by defendant. The bill alleged, and the proof showed, that defendant had brought in but a small part of the waters of Mink creek, had failed to make the required extensions or to keep existing pipes in repair; that, on the contrary, he had reduced the supply by making regulations restricting the use of water and placing "reducers" in the supply pipes to the extent of preventing the city from obtaining water for street sprinkling or fire protection and the inhabitants for domestic purposes, to the injury of their health and property. *Held*, that such ordinance required defendant to bring in all the waters of Mink creek as well as to make the specified extensions, for which he received consideration in the concessions made by the city, and that, on the facts shown, the city was entitled to a decree annulling the ordinance.

 [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 287, 288; Dec. Dig. § 188.*]

Appeal from the District Court of the United States for the Eastern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the City of Pocatello against James A. Murray, doing business under the name of the Pocatello Water Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 206 Fed. 72.

N. M. Ruick and Hawley, Puckett & Hawley, all of Boise, Idaho, for appellant.

D. Worth Clark, Jesse R. S. Budge, and W. H. Witty, all of Pocatello, Idaho, for appellee.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

ROSS, Circuit Judge. By an ordinance, numbered 46, adopted and approved on the 4th day of January, 1892, the board of trustees of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

then town of Pocatello, in the state of Idaho, granted to F. D. Toms, John J. Cusick, and James A. Murray, their associates, successors, and assigns, the right to construct, maintain, and operate a complete system of water mains, pipes, and conduits in, along, and under the streets and alleys of the town, for the purpose of furnishing it and its inhabitants with water.

By the terms of the ordinance the franchise was to continue for 50 years from its passage and approval, and among the conditions imposed upon the grantees were the following:

They were to begin work within four months, prosecute it with reasonable diligence, and complete the plant ready for the delivery of water within a certain specified time, which water, the ordinance declared, should "be conveyed from the creeks on the Ft. Hall Indian reservation, known as Mink and Gibson Jack creeks, and shall be in quantity sufficient to supply both the public and private use and purpose of the citizens and inhabitants of the town of Pocatello, and shall be of pure and healthful quality," and which water should be "conveyed to a point above the town of Pocatello and shall be confined in a suitable and substantial reservoir or reservoirs"; the pipes or mains on a certain named street to "have a pressure of at least 150 feet perpendicular fall." The ordinance provided for one designated main pipe of at least eight inches in diameter, and for certain designated laterals for the distribution of the water, and further declared that "thereafter main pipes and laterals may be laid as the occasion or consumption demand." It further provided for the giving of a bond on the part of the grantees in the sum of $10,000 "to indemnify the said town of Pocatello against all loss and damage done or occasioned by reason of the construction, maintenance, and operation of said water system," and further declared that, upon a failure of the grantees, their associates, successors, or assigns to perform the conditions thereby imposed upon them, the town should have the right to "revoke, avoid, and annul this ordinance and all rights, privileges, and franchises hereby granted."

Subsequently a corporation, styled the Pocatello Water Company, Limited, was organized, to which were assigned the rights conferred upon Toms, Cusick, and Murray by ordinance 46, following which assignment the town of Pocatello, on the 7th day of June, 1898, adopted an ordinance numbered 59, which confirmed to and continued in that corporation, as such assignee, the rights and privileges theretofore conferred upon its assignors by ordinance 46, reciting in its preamble that the said assignors had fully complied with the terms and conditions of ordinance 46, and further reciting that reasonable and just rates for the water furnished had been established by a commissioner duly appointed under the laws of the state, and that for the better distribution of the water, and in order to keep the same pure and wholesome, it was necessary for the company to abandon its wooden flume and supplant it with steel, at a cost of about $30,000, proceeded to make certain stipulations in respect to the rates (not necessary to be here enumerated), and concluded with the provision that:

"Within thirty (30) days from the passage and approval of this ordinance the said company shall commence the improvements and the laying of said line

of pipe mentioned in the preamble, and carry on the same to speedy and effective completion without unnecessary delays, interruptions, or discontinuances, and such compliance with this ordinance shall entitle the company to the benefit of its provisions as in virtue of an executed contract; but if more than thirty (30) days shall elapse without such commencement by said company this ordinance shall lapse and be declared null and void."

Subsequent to this the town of Pocatello became the city of Pocatello, with an increased population, and, the appellant here being then the owner and in the operation of the system by which the city and its inhabitants were supplied with water under and by virtue of ordinances 46 and 59, the city adopted ordinance No. 86, which this suit was brought to annul, and which suit resulted in a decree annulling it, from which decree the present appeal was taken. The last-mentioned ordinance is as follows:

### "Ordinance No. 86.

"An ordinance confirming and continuing certain privileges and franchises formerly granted to F. D. Toms, John J. Cusick and James A. Murray, to and in James A. Murray, the legal successor of said parties, making a contract by the city of Pocatello with James A. Murray for supplying said city with water · for public and private use; fixing the rates to be charged for said water; providing a means of ascertaining the value of said water system, as a basis of readjusting rates in the future, or in the event of a sale; and waiving the right on the part of said city to build, own or acquire a competitive water system, except under stated conditions or of granting to others more favorable terms or franchises than that now held and granted to said James A. Murray.

### "Preamble.

"Whereas, the town or village of Pocatello, on the 4th day of January, 1892, conferred and granted to F. D. Toms, John J. Cusick and James A. Murray, their associates, successors and assigns, the right, authority and permission to construct, maintain and operate an entire and complete system of water mains, pipes and conduits, and also a right of way over, along and under all and every street, alley and public highway within the corporate limits of the town or village of Pocatello for a period of fifty (50) years, for the purpose of laying along, over and under said streets, alleys and public highways, water mains, pipes and conduits for the purpose of furnishing and supplying the said town or village of Pocatello, and the inhabitants thereof with a sufficiency of pure and healthful water, and annexing certain conditions precedent to said grant; and, whereas, the said F. D. Toms, John J. Cusick and James A. Murray, and their associates, successors and assigns, fully complied with said condition precedent, and obtained vested rights under said grant; and, whereas, the city of Pocatello is a city of the second class and is the legal municipal successor of the said town or village of Pocatello; and, whereas, a commissioner duly appointed and constituted, did on or about the first day of September, 1896, make and establish rates and charges for water and water service by the Pocatello Water Company, Limited, a corporation, then owner and holder of said privileges and franchises, for both public and private uses, which said rates were confirmed and continued by the provisions of ordinance No. 56 (59) approved June 8th, A. D. 1898; and, whereas, the rates and charges so fixed and continued are now deemed and considered to be fair, equitable, reasonable and just, and will continue to be fair, equitable, reasonable and just, in the near future; and, whereas, the said James A. Murray has succeeded to and is now the owner and holder of all property of whatever kind and nature formerly owned or held by said Pocatello Water Company, including said water system complete, and all rights, privileges and franchises appurtenant thereto, or used therewith; and, whereas, the present supply of water furnished by said water system is deemed inadequate for the present and future need of said city, and said James A. Murray agrees to bring in the waters of Mink creek, and to make all extensions of

street mains warranted by the growth of said city, thereby necessitating the laying of several miles, of pipe at a large additional expenditure of money; and, whereas, said James A. Murray, before incurring so great an additional outlay, as a condition precedent to the expense of laying said pipe line, desires to be protected against unreasonable or arbitrary changes in the rates and charges for water and water service, and asks some reasonable assurance that such unreasonable or arbitrary changes shall not be made; and, whereas, the demand of said James A. Murray is considered reasonable and just, and it is deemed to be for the best interest of the city of Pocatello to extend and give the assurance asked for: Now, therefore, be it ordained by the mayor and council of the city of Pocatello:

"Section 1. That the privileges and franchises originally given, granted and conferred to and upon F. D. Toms, John J. Cusick and James A. Murray, their associates, successors and assigns, as recited in Pocatello town or village ordinance No. 46, passed and approved January 4th, 1892, are hereby ratified, continued and confirmed unto James A. Murray, and to his successors and assigns according to the terms of said original grant, he, the said James A. Murray, being the legal successor of the said F. D. Toms, John J. Cusick and James A. Murray, therein named.

"Sec. 2. The schedule of rates and charges for water and water service, both public and private, supplied and furnished by the Pocatello Water Company, to the city of Pocatello, and the inhabitants thereof heretofore fixed and adopted by the commission duly appointed and constituted, whose report was received, filed and adopted on or about the first day of September, 1896, and now in full force and effect within the said city of Pocatello, is hereby declared to be fair, equitable, reasonable and just, and shall hereafter continue to be the schedule of rates and charges for water service by the said James A. Murray, for both public and private uses, except as hereinafter stated, to wit: [Schedule of water rates omitted as unnecessary.] Provided, that in cases where consumers are paying for either residence or lawn sprinkling privileges no charge shall be made for one horse or cow, and where consumers are paying for both lawn and residence privileges no charge shall be made for one horse and one cow or for two horses or two cows.

"Sec. 3. The foregoing rates and charges are hereby adopted by the city of Pocatello, by and for itself, and as trustees for the use and benefit of all private consumers of water within the corporate limits of said city for a period of five years from and after the passage and approval of this ordinance. At the expiration of said time, if the earnings of said water system, shall exceed five per cent. above reasonable expenses upon the value of said water system as then agreed upon, or as may be ascertained as hereinafter provided, then the rates as set forth in the 'Schedule of Water Rates' of section two of this ordinance may be readjusted so as to yield not less than five per cent. above reasonable expenses on the valuation, but no readjustment shall hereafter be made that will yield less than five per cent. above reasonable expenses, on the value of the investment ascertained as hereinafter provided for in section four.

"Sec. 4. If, at the expiration of five years, or at any time thereafter, it should be deemed necessary to readjust rates under the provisions of section three, and if the city of Pocatello and the said James A. Murray, or his successors or assigns, cannot agree upon the value of said water system, for the purpose of such readjustment, then the value of said water system shall be ascertained and determined in the following manner, to wit: A committee of four experienced and disinterested hydraulic engineers who must be members of the American Society of Civil Engineers, shall be selected, two by the city of Pocatello, and two by said James A. Murray, or his successors or assigns, and the following questions shall be submitted to them: For what sum can the water system of James A. Murray be now duplicated? If a majority of the four cannot agree they shall elect a fifth, and if they cannot agree upon a fifth, they shall request the president of the American Society of Civil Engineers to appoint a fifth member. The decision of a majority of the committee so selected shall fix the value of said water system for the purpose of readjusting said rates and such decision shall be final.

"Sec. 5. The city of Pocatello shall not hereafter grant to an individual,

corporation or association any terms or franchises for the construction or operation of a water system more favorable than the terms and franchises now held, confirmed and continued in said James A. Murray; nor shall the city of Pocatello build, acquire, own or operate a water system of its own, until it has in good faith offered to purchase the water system of the said James A. Murray, or his successors or assigns, at a price to be ascertained as follows: If the owners of said water system and the city of Pocatello cannot agree upon the price then a committee of experienced and disinterested hydraulic engineers, who must be members of the American Society of Civil Engineers, shall be selected in the manner set forth in section four of this ordinance, who shall fix the value of said water system for the purpose of such sale, and the decision of a majority of such committee shall be final. At intervals of five years from the approval of this ordinance and during the period of ninety days, immediately following the completion of each five year interval, the city may purchase the water system of the said James A. Murray or his successor or assigns, under the conditions specified in this section, but at no other time except by mutual consent of the city and the owner of said water system. In fixing the value of said water system whether for the purpose of selling or of readjusting rates, the water system of the said James A. Murray, or his successors or assigns, shall be held to mean and include all of the pipes, mains, hydrants, conduits, ditches, reservoirs, dams, water rights, rights of way, natural and acquired advantages, franchises, implements, storage grounds, material on hand, and all rights and property of what kind soever, either in use or on hand and belonging to the said James A. Murray, in his capacity of furnishing water for any and all purposes to himself and to his customers, at Pocatello, Idaho, saving and excepting account books, and records; and each article of property aforesaid shall be separately considered and evaluated by said committee, and in the event of the city of Pocatello purchasing said water system under this ordinance, said James A. Murray shall transfer all his rights, title and interest in and to said property to said city, and the said city shall receive and pay for the whole plant as aforesaid, the said James A. Murray stepping out, and leaving all said property undisturbed and ready for the city to step in.

"Sec. 6. Within ninety days from and after the passage and approval of this ordinance, the said James A. Murray shall commence or cause to be commenced the improvements mentioned in the preamble hereto, and shall carry the same to effective and speedy completion, without unnecessary delays, interruptions or discontinuances, such compliance with this ordinance shall entitle said James A. Murray, his successors or assigns, to the benefits of its provisions, as in virtue of an executed contract; but if more than ninety days shall elapse without such commencement this ordinance shall be and the same is hereby declared null and void.

"Sec. 7. That in consideration of the improvements named in this ordinance, the city of Pocatello hereby agrees to rent, receive and pay for, not less than forty-five (45) fire hydrants, at the schedule rate named in section 2 hereof; and within ninety days after the passage and approval of this ordinance to designate points on the water mains at which the extra hydrants shall be placed as soon as may be, the hydrants to be subject to rental from and after the date of their being placed in position.

"Sec. 8. If at any time the said James A. Murray, or his successors or assigns, fails to supply sufficient water for the needs of the city of Pocatello and the inhabitants thereof, then it shall be optional with the city of Pocatello to secure a further supply of water from any other source, directly or indirectly, without reference to the provision of this ordinance: Provided, however, that said James A. Murray shall have a reasonable time in which to complete the improvements as may hereafter become necessary to supply sufficient water as aforesaid before the provisions of this section shall apply.

"Sec. 9. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"Passed, this 6th day of June, 1901.

                                        "T. O. Smith, City Clerk.

"Approved this June 6th, 1901.
        "Theo. Turner, Mayor."

The amended bill alleges, among other things, that the defendant Murray violated his agreement contained in ordinance 86 by failing to bring into the city the waters of Mink creek, or any part thereof, "in excess of $46/100$ of one second foot per second of time, notwithstanding that during the low-water season of each and every year since the passage of said ordinance there has been flowing in said Mink creek at the point where defendant diverts said $46/100$ foot of water per second of time, more than $3\frac{1}{2}$ second feet of water per second of time," and further alleges that a large part of the water of Mink creek that he does divert is lost by leakage because of the defective condition of the pipes of the system; that the defendant has failed to make the necessary extensions of street mains required by the growth of the city, or to even keep in repair the pipes of the existing system, but has promulgated rules and regulations restricting the use of water by the city and its inhabitants during the summer months to such an extent as to prevent the city from keeping its streets sprinkled, and to the extent of preventing the inhabitants of the city from obtaining water for culinary and domestic purposes, or for lawn sprinkling, and that during the months of June, July, August, and September of each and every year for many years past the city and its inhabitants have suffered great inconvenience and annoyance, and the health of the inhabitants has been jeopardized and the property within the city rendered liable to loss by fire by reason of the neglect and wrongful conduct of the defendant in failing to bring into the city the waters of Mink creek, and by other acts specifically alleged; that, because of the defendant's neglect to bring into the city the waters of Mink creek, the said system's supply of water became so depleted during the summer of 1911 that the reservoirs thereof became empty and the city and its inhabitants were for more than one month practically without any water supply for any purpose whatsoever, and that the city was obliged to and did pump water from the Portneuf river, the water of which, while pumped at great expense, was really unfit for domestic uses; that in addition to his neglect to bring into the city the waters of Mink creek and his promulgation of unreasonable restrictions concerning the use of the waters of the system, and in order to avoid the expense of laying pipes to bring into the city the waters of Mink creek and to otherwise improve the said water system in order to meet the needs of the city and its inhabitants, the defendant has inserted in the pipes leading to the private residences and business houses in the city contrivances known as "reducers," and has otherwise tampered with the said pipes so as to obstruct the free flow of water through the same, whereby the inhabitants of the city, during the summer months, are not furnished with a sufficient supply of water for culinary and domestic purposes, or for lawn sprinkling, which has not only subjected them to great annoyance and inconvenience, but has injured the health of the people of the city, as well as the property thereof.

The principal question in the case is whether, by ordinance 86, Murray was required to bring into the city all the waters of Mink creek, or only the comparatively insignificant part of them which the evidence shows he did bring in, to wit, $46/100$ of one second foot per second of

time. The question, we think, admits of no doubt. The original ordinance, that numbered 46, provided that the water to be supplied thereunder to the town and its inhabitants should come "from the creeks on the Ft. Hall Indian reservation, known as Mink and Gibson Jack creeks," and should "be in quantity sufficient to supply both the public and private use and purpose of the citizens and inhabitants of the town of Pocatello." Later, however, as the evidence shows, the town grew from a village into a small city, so that, according to the evidence, at the time of the adoption of ordinance 86, its population was about 10,000. And not only does the evidence show, but ordinance 86 expressly recites, the fact that the water theretofore supplied under and by virtue of ordinances 46 and 59 had become insufficient for the then necessities of the city and its inhabitants; that ordinance expressly declaring in its preamble that:

"Whereas, the present supply of water furnished by said water system is deemed inadequate for the present and future need of said city, and said James A. Murray agrees to bring in the waters of Mink creek, and to make all extensions of street mains warranted by the growth of said city, thereby necessitating the laying of several miles of pipe at a large additional expenditure of money," etc.

The only obligations imposed by the provisions of ordinance 86 on the appellant Murray, with which he was not already charged under the two former ordinances, are found in the above-quoted portion of the preamble of ordinance 86, and in section 6 thereof, by which the grantee recognized the inadequacy of the supply of water for the then condition of the city and its people, as well as for their future use, and agreed to bring in the waters of Mink creek and to make all extensions of street mains warranted by the growth of the city, which by section 6 he agreed to commence doing within 90 days, and to "carry the same to effective and speedy completion without unnecessary delays, interruptions, or discontinuances." For those additional obligations on his part the city, by ordinance 86, expressly confirmed and continued in effect his then existing rights and privileges under the two preceding ordinances, expressly declared that the then existing water rates were fair and should not be changed for a period of five years, and then only upon certain conditions and in a manner therein specified, expressly declared that no other person or corporation should be granted a franchise upon more favorable terms, and that the city itself would not construct or operate a system in competition with the grantee without first having in good faith offered to purchase his plant at a price to be fixed by a board of engineers in the manner specifically prescribed, and further agreed that the city would rent and pay for, at the schedule rates, at least 45 hydrants to be installed in the system by the grantee. Manifestly those concessions on the part of the city and obligations assumed by it were not in consideration of anything the grantee was already under obligation to do. He was already obliged, as has been shown, by ordinance 46 to bring into the city, for its use and the use of its inhabitants, a part of the water of Mink creek and to provide the necessary reservoirs and certain specified mains and lateral pipes, but, when the growth of the city became such as to render the former supply and service insufficient, the grantee, in consideration

of the further concessions and valuable agreements on the part of the city, agreed by ordinance 86 to bring into the city, not a part of the water of Mink creek, which, as has been stated, he was already under obligation to do and was then doing, but to "bring in the waters of Mink creek," which is an altogether different thing, and embraces all of the waters of that stream. His failure to do so and to provide the necessary conduits for them clearly justified, in our opinion, the judgment of the court below annulling ordinance 86, especially in view of the further facts, disclosed by the evidence and found by the trial court to be true, that the appellant, instead of enlarging his mains and bringing into the city the waters of Mink creek as he contracted to do, to relieve the shortage in the supply of water which the evidence shows and the court found exists during the summer season, actually equipped the system with a device called in the record "reducers," by which the half-inch opening from the main into the service pipe of each consumer was reduced to one-fourth of an inch, and the two-inch goosenecks from which water was delivered into the city sprinkling carts were reduced to about one-half an inch.

The judgment is affirmed.