382 P.2d 788

**Thomas M. WEEKS, Arvey A. Weeks, and Ivan R. Weeks, Plaintiffs-Respondents,**

v.

**Archie McKAY, Defendant-Appellant.**

**No. 9229.**

Supreme Court of Idaho.

June 12, 1963.

O. R. Baum, Ben Peterson, Ruby Y. Brown, Robert W. Bennett, Pocatello, for appellant.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for respondents.

KNUDSON, Chief Justice.

Rainey Creek, in the spring of the year and during other high water periods, is a continuous stream flowing across appellant's land, but during the summer season is usually divided into two streams, viz.: Upper Rainey Creek and Lower Rainey Creek. The water of Upper Rainey Creek usually sinks and disappears before getting to the 9½ acre lake which is fed by springs and constitutes the headwaters of Lower Rainey Creek. Said lake is also fed by a slough with a surface area of about 2.8 acres which is a short distance upstream. A substantial part of the 9½ acre lake is situate on appellant's land and the 2.8 acre slough is on land owned by persons who are not parties to this action.

Respondents are property owners downstream from appellant's land and they are the owners of a decreed water right of 160 inches (3.2 C.F.S.) in the waters of Lower Rainey Creek with a priority of June 1, 1893 which is appurtenant to their land as described in paragraph 1 of respondents' complaint. The point of diversion of such water is a little over a quarter of a mile downstream from the 9½ acre lake. Respondents also have certain rights to water stored in Palisades Reservoir which is at times delivered to them via Rainey Creek.

During the fall of 1957 appellant employed one Lloyd Rush to do exacavation work in Rainey Creek. Appellant admits that he employed Mr. Rush of the Rush Construction Company to perform excavation work in Upper Rainey Creek, but denies that such employment included excavation at the lake outlet or in Lower Rainey Creek.

After the excavation had been completed appellant constructed a headgate or dam approximately 12 feet long across the channel of Lower Rainey Creek just below the outlet from the lake. Said dam has a concrete base with a center pier and ends approximately 64 inches high and is so

constructed that the elevation of water behind the dam may be regulated by planks which may be inserted in or removed from slots made in the center pier and ends of the dam.

This action was commenced by respondents seeking an injunction against appellant and all persons acting for or in aid of him, restraining them from maintaining and using said dam. From a judgment in favor of respondents this appeal has been taken.

■ Appellant contends that the court erred in finding that appellant employed the Rush Construction Company to clean out the outlet of the lake and that by reason thereof the mouth of the lake was lowered 8 inches. Although appellant denied that he employed said company to clean out the outlet, Mr. Rush testified that he was given specific instructions by appellant to do so and that he removed such amount of material from the outlet as lowered it 8 inches to a foot in depth and widened it six or eight feet. The finding complained of is supported by competent evidence.

■ Under assignment of error No. III it is claimed that the court erred in finding that the dam constructed by appellant was 44 to 48 inches in height above the concrete footing of the dam. In this connection David Peterson, a deputy watermaster, testified as follows:

"Q. What did you find about the height of that dam; that is to say, the number of planks in it?

"A. Well, the first time I went over there there was three 12-inch planks, one-foot planks, and three two by fours in the spillway.

"Q. There was three two by fours and three 12-inch?

"A. That's right.

"Q. And was the water backed up to the top of those planks?

"A. Yes.

"Q. That would be four feet? That dam, then, was four feet high, is that right? That would look about the right height to you there? I mean, that's about what it was?

"A. That's exactly what it was."

The court did not err in making the finding complained of.

■ Appellant's contention that "there is no evidence in the record that the conduct or actions of the appellant interfered with the natural flow of the water" in Lower Rainey Creek is clearly without merit. The contention that the court erred in finding that during 1961 respondents failed to get their natural flow water or storage water is also without merit.

Considerable of appellant's brief is devoted to discussing statements or findings of

the court relative to the claimed rights of appellant to the waters in the lake. In this regard the court found that the waters in said lake are public waters of the State of Idaho and any right which appellant has as a riparian owner or proprietor therein or thereto is subject and inferior to the rights and claims of respondents. Appellant concedes that any right which he has to the water of said lake are inferior to the decreed rights of respondents to 160 inches of said water, plus such storage rights as they may have acquired. Consequently it is unnecessary to a determination of the issue in this case to define what rights, if any, appellant has to such water.

■ Appellant further argues that respondents do not have a right to any more water than normally and naturally flows from said lake in its natural state unaffected by artificial changes in the depth and width of the channel and outlet of the lake. There is merit to such contention. However, artificial changes in the channel and outlet of the lake have been made in this case and such changes have brought about this suit.

The trial court found that by reason of the installation of the dam by appellant the respondents were unable to obtain for the irrigation of their lands, a large portion of the natural flow water to which they were entitled under their decreed right, and were unable to obtain or use the exchange water from the Palisades Reservoir. Such findings are adequately supported by competent evidence.

■ One who undertakes to change the natural channel of a stream or by means of dams or otherwise increases or diminishes the flow of a stream must exercise care in so doing and take such precautions as to prevent injury to others. Mashburn v. St. Joe Improvement Co., 19 Idaho 30, 113 P. 92, 35 L.R.A.,N.S., 824; Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146. The generally accepted rule is stated in 56 Am.Jur., 505, Waters, § 14, as follows:

"It is established, however, that the ordinary or natural course of water cannot lawfully be changed for the benefit of one person or class of persons to the injury of another. Accordingly, one who changes the course of a stream must do so in such manner as not to injure, or unduly interfere with the rights of, the adjoining proprietor, either above or below, or on the opposite side of the stream. * * *"

It is further stated in 56 Am.Jur. 510, Waters, § 18, that:

"* * * a riparian proprietor has the right, inseparably annexed to the soil, to have the water of a stream flow to and from his land as it has been wont to flow, so far as is consistent with the right of other owners to make

a reasonable use of such water. It follows that the obstruction of the natural flow of a stream is always done at the risk of being answerable in damages to him who sustains a loss thereby. Without the consent of the other proprietors who may be affected by his operations, an upper proprietor has no right unreasonably to interrupt or retard the natural flow of the water, to the injury of the lower owners, * * *"

Appellant complains of the following finding of fact:

"That the top of the concrete base or footings of the said dam is twelve (12) inches below the level of the existing channel of Lower Rainey Creek; that the present level of the channel of Lower Rainey Creek at said dam is eight (8) inches lower than it was before same was dredged and deepened by defendant and his agents; * * *"

Appellant argues that the court's conclusion that the channel at the dam is only 8 inches lower than it was before it was dredged and deepened by appellant and his agents, is but an arbitrary conclusion of the court. It is true appellant and some witnesses testified that the bed had been lowered more than 8 inches, however, among others, the man who did the work testified that he lowered the outlet of the lake between 8 and 12 inches, and the court was justified in accepting his estimate.

Appellant strenuously complains concerning the language used in the last portion of said finding No. XV, which is substantially the same as is used in a portion of the last paragraph of the judgment. The language referred to is as follows:

"* * * that planks or boards may be installed and maintained in said dam on top of said concrete base or footing to a height of twenty (20) inches, and no more."

Appellant argues that this language, in effect, increased respondents' rights, whereas, the court should not have restricted appellant from maintaining the lake at a higher level so long as it does not interfere with respondents' rights. We do not agree with appellant's claimed effect of the judgment, however there is some justification for complaint regarding the language used:

■ This action was commenced seeking an order enjoining and restraining appellant from interfering with the natural flow of Lower Rainey Creek to respondents' damage; its objective is to preserve respondents' water rights. The trial court found that if the dam in controversy is maintained at a height of 20 inches above the concrete base or footing of the dam, it will permit the same amount of water to escape from the lake and proceed down Lower Rainey Creek to respondent's diversion point as would occur if its channel had remained undisturbed. Under such condi-

tion it will not be appellant's responsibility, if, during any period of the year, the amount of water flowing from the lake is less than the quantity to which respondents are entitled.

Appellant acknowledges that he has in the past received benefits resulting from the percolation of water from the lake sub-irrigating approximately 70 acres of his land and also that the level of the lake affects the amount of sub-irrigation his land receives. Appellant further acknowledges that he has no decreed right to the water in the lake here involved and from the record before us it appears that appellant enjoys only the rights or privileges of a riparian owner. However, since the issue here presented, and the relief hereby sought, involves only the preservation of respondents' rights, we are of the view that so long as the provisions of the judgment properly enjoin appellant from in any manner interfering with, and adequately protects, respondents' rights such judgment would be proper. We conclude that the last paragraph of the judgment should be amended to read:

"IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that defendant, his agents, servants, employees and all others acting in aid or assistance of him be hereby perpetually enjoined during the irrigation season of each year from maintaining said dam at a height more than twenty (20) inches above the concrete base or footing of said dam if and when any additional height would interfere in any respect with plaintiffs' rights or privileges relative to the water of Rainey Creek or the Palisades Reservoir or the prior rights of others. In the event of a violation of the foregoing order by defendant or any person acting in aid or assistance of him, he may thereafter be perpetually enjoined from, at any time, maintaining said dam at a height in excess of 20 inches above the concrete base thereof. Plaintiffs shall have judgment for their costs in the amount of ———— DOL-LARS."

We have examined the remaining assignments of error and find no error that would justify a reversal of the judgment in this case.

The cause is remanded with instructions to the trial court to amend its findings of fact, conclusions of law and judgment in accordance with the views herein expressed. Costs to respondents.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.