(April 30, 1909.)

IDAHO POWER AND TRANSPORTATION CO., a Corporation, Plaintiff, v. JAMES STEPHENSON, Jr., State Engineer, Defendant.

[101 Pac. 821.]

MANDATE—APPROPRIATIONS—BENEFICIAL USE—PERMIT—CERTIFICATE—LICENSE—FEES TO BE CHARGED BY STATE ENGINEER.

1. The state engineer may be compelled to perform the ministerial duties of his office by writ of mandate.

2. Under the provisions of an act entitled "An Act to Regulate the Appropriation and Diversion of the Public Waters and to

Establish Rights to the Use of Such Waters and the Priority of Such Rights," approved March 11, 1903 (Sess. Laws 1903, p. 223, section 3253 et seq., Rev. Codes 1909), the legislature has prescribed the method and procedure by which the use of the public waters of the state may be appropriated for useful and beneficial purposes.

3. Upon compliance by the applicant with certain provisions of said act, the state engineer is authorized to issue a permit to him.

4. When proper proof of the completion of the contemplated works is presented to the state engineer and approved by him, he is required to issue a certificate of the completion of such works to the holder of such permit, or his assigns, setting forth therein certain facts required to be set forth by the provisions of said act.

5. Thereafter, upon proper proof of the application of the water sought to be applied to a beneficial use, the state engineer is required to issue a license confirming the right to use such water for the specified beneficial purpose.

6. The state has control of the public waters of the state, and may prescribe rules and regulations whereby they may be appropriated and applied to a beneficial use.

7. Upon the issuance of a certificate by the state engineer certifying to the completion of the works necessary to apply the water to a beneficial use, he may exact a fee to cover the expense of the examination of such works from the person or persons, on submitting the proof of completion, as follows: For ditches and canals or other works having a capacity of ten cubic feet per second of time, or less, a fee of five dollars; and where the capacity is more than ten cubic feet per second, thirty cents for each second foot of the capacity of such works.

8. Riparian owners who desire to appropriate public waters for a beneficial use must comply with the provisions of the law the same as those who are not riparian owners.

(Syllabus by the court.)

Original application for a writ of mandate to compel the state engineer to issue to the plaintiff a certificate certifying that the works of the plaintiff power company have been completed as required by law. Application denied and proceeding dismissed.

O. E. McCutcheon, for Plaintiff.

Inasmuch as this petitioner does not divert nor propose to divert any water from the natural bed of the stream, does

not rent, sell or distribute the same, and does not and cannot interfere with the right of any person who, either heretofore has diverted and appropriated, or who may hereafter divert and appropriate, any of said waters, but only to enjoy the incidental and usufructuary benefits thereof, as they flow over its own land, the permit of the state engineer is a superfluity, and if he takes a fee he gives nothing in return.

The state had no occasion, neither did it undertake, by this act, to interfere with the incidental use which this petitioner seeks to make of the running waters of Snake river as they pass over its land. Petitioner has the most undoubted right to a power privilege, which "consists of the difference of level between the surface where the stream first touches his land and the surface where it leaves it." (Angell on Watercourses, 7th ed., sec. 95, and cases there cited.)

D. C. McDougal, Attorney General, J. F. McLane, J. H. Peterson assistants, and H. W. Wing, for Defendant.

If a person against whom a *mandamus* is prayed is invested with judicial power, or acts in a deliberative capacity, or has the power and right of deciding, the writ will not lie except to compel him to proceed to the discharge of his duty by deciding according to the best of his judgment. (*Ex parte Shaudies,* 66 Ala. 134; *Towle v. State,* 3 Fla. 202.) Plaintiff has a plain, speedy and adequate remedy at law if the state engineer has wrongfully refused to grant license. (Sec. 3265, Rev. Codes.)

SULLIVAN, C. J.—This is an original application for a writ of mandate to the state engineer to require him to issue a certificate to the corporation plaintiff of the completion of its power plant works, whereby it intends to put to a beneficial use 1500 second feet of the waters of Snake river for power purposes.

It appears from the application for the writ that the plaintiff is a corporation, duly organized under the laws of the state of Idaho; that on January 29, 1904, said corporation desired to erect at a certain point on Snake river in Bing-

ham county, a dam and power-house for the purpose of utilizing a portion of the water of said river in generating power, and that to that end said corporation on the date last named filed in the office of the state engineer its application for a permit to appropriate 1500 feet per second of time of the waters of said river; that said application was made upon and in accordance with a blank form in use in the office of the state engineer for the general purposes of applicants under the provisions of an act of the Idaho legislature relating to the appropriation of water for power, irrigation and other purposes (Sess. Laws 1903, p. 223; section 3253 et seq., Rev. Codes, 1909); that said application was approved by the state engineer on January 30, 1904, and the permit therein applied for was granted upon condition that one-fifth of the work contemplated in said application should be completed on or before January 30, 1906, and the whole of said work should be completed on or before January 30, 1908, at which latter date proof of beneficial use of the waters so appropriated was extended to January 30, 1912; that said corporation, after receiving said permit, proceeded to construct said works and completed the same, and made proof of completion thereof as required by said permit, the proof of final completion having been made and filed with the state engineer before the 30th day of January, 1908; that said proof of completion was satisfactory to the state engineer, and was held and accepted by him as full compliance with the law in that behalf, so as to authorize him to give his final approval and certificate to the plaintiff of the completion of said works, and the only question in relation to the same between the said corporation and the state engineer is in respect to the fees which the said corporation should pay to the state engineer under the provisions of section 10 of the act above cited, which is section 3263, Rev. Codes of 1909. The state engineer demanded as such fee thirty cents per second foot for 1500 second feet capacity, amounting to $450, that being the capacity of said works, while said corporation, without admitting its legal liability therefor, was willing and offered to pay and tendered to the

state engineer the sum of $5, and on such tender the said corporation requested the state engineer to approve such proof and issue his certificate to said corporation of the completion of said works, but that the state engineer refused to accept such tender of $5, and refused to issue said certificate or any certificate except upon the payment of $450, and the only question presented by this record is whether the engineer may charge a fee of thirty cents for each second foot of the capacity of said works.

It appears from the complaint that the works so constructed by said corporation consist of a dam and powerhouse; that said works are located at a point on said river where the same flows over a rocky bed forming natural rapids. The stream at said point is divided, when the river is at its ordinary stage, by certain projecting rocks in the nature of small islands, and the different parts of said dam were built between said islands. The power-house rests upon the rocky bed of the stream at a point where the same is left bare at the time of low water, and a head of water is obtained simply by raising the water by means of said dam, a part of the foundation of which dam is formed by the power-house. The water-wheels of said power-house are located on the lower or downstream side of that part of said foundation, so forming a part of said dam, and the water is led to said water-wheels through an opening in said dam. No ditch or canal was constructed or formed any part of said works, nor is any water diverted by said works from the natural bed and channel of said river, and where said application mentions a ditch, it means only that portion of the natural channel of said river through which the water flows to and through said power-house; and where said application speaks of the diversion of such water, it means only such diversion as would take place by reason of the raising of said water and thereby changing the flow of any of said water from one to another of the natural channels in the bed of said river. A map of said works and of the river is attached to the applicant's petition.

It also appears that said corporation owns the land on both sides of said river at the point where said dam is located, and that the land forming the natural banks of said river is high bench land on both sides and is not overflowed by reason of said dam.

This application is made for the purpose of securing the issuance of a writ of mandate requiring and commanding the state engineer to issue to said corporation a certificate of completion of its works in the usual form, as required by section 5 of the act aforesaid, for a fee of not more than $5.

To said complaint, the attorney general, on behalf of the state engineer, demurred on the ground that the complaint does not state facts sufficient to constitute a cause of action, and does not state facts sufficient to entitle the plaintiff to the relief prayed for, or to any relief whatever. The attorney general also interposed a motion to quash on three several grounds, to wit: (1) That the granting of a license for the use of certain of the public waters of the state is a discretionary act on the part of the state engineer, the performance or nonperformance of which involves the exercise of deliberative power and is in no wise ministerial. (2) That the plaintiff herein has a plain, speedy and adequate remedy at law; (3) That according to the plaintiff's showing, he is not entitled at this time to the remedy prayed for, for the reason that he has never submitted or offered proof of beneficial use necessary before license can issue.

The case was presented to this court on written briefs and oral argument.

We will say *in limine* that the only question in dispute in this case is the amount of the fee to be paid for the issuance of a certificate of completion of said works. That is a question of law, and when that fee is determined and paid, the only duty remaining for the state engineer in that regard is to issue the certificate required to be issued under the law. The issuance of the certificate is a ministerial duty, and in case the state engineer refuses to issue it after the proper fee has been tendered, he may be compelled by writ of mandate to issue it. Of course, if there was any ques-

tion in regard to the sufficiency of the proof of completion, the state engineer could not be required to decide that such proof was sufficient, as his discretion in deciding that matter cannot be controlled by mandate.

There seems to be some confusion in the minds of counsel for plaintiff in regard to the terms "license" and "certificate," as used in said act. It appears that said act refers to a "license" and a "certificate." The certificate is issued upon proof of completion of the works. The license is issued after the proof of the application of the water to the use intended or after proof of the beneficial use of the water, and it appears that the terms "license" and "certificate" have been confused, not only in the complaint, but also in the motion and on the argument of the case.

Sec. 4 of said act provides that on or before the date set for the completion of the works, the holder of the permit shall notify the state engineer that he is prepared to submit proof of completion of his works. The statute provides how such notice must be given, and that the state engineer, upon receiving the required notice, shall immediately order its publication for a period of four weeks in some newspaper, and also requires that such published notice shall contain a statement of certain facts, and it also provides what proof may be offered of the completion of the works and the duties of the state engineer in connection therewith.

Sec. 5 provides, among other things, that on or before the date set for receiving proof of completion of the works, the state engineer shall cause to be made a full inspection and examination of such works and shall make, or cause to be made, a report on their condition, stating whether or not they conform to the terms of the application and permit, and are capable of diverting the amount of water intended, and shall ascertain how much water such works are capable of diverting and conducting to the place of intended use, and shall issue a certificate to the holder of such permit, or his assigns, which certificate shall set forth: "(1) The name of the holder of the permit under which the works were constructed, (2) the number of such permit, (3) the date of

the application for the same, (4) the postoffice address of such holder, (5) the condition of such works, (6) the purpose for which they were constructed, (7) the quantity of water which can be diverted by the same and conducted to the place of intended use, (8) and if such water is to be used for irrigation, a description of the lands for which water is made available by such works.''

Sec. 7 provides, among other things, that on or before the date set for the beneficial use of water diverted under the provisions of that act, the person or persons using such water shall submit proof that they have used such water for the beneficial purpose for which the diversion of such water was intended. Such user is required to notify the state engineer that he is prepared to prove that such water has been beneficially applied to the purpose for which it is intended. Upon receipt of such notice by the state engineer, he is required to order its publication in some newspaper designated by such user, and published in the county in which the major portion of the land is situated, for a period of four weeks, and is required to fix a date when such proof shall be submitted, and name a place where such proof will be received. Before the date set for such final proof, the state engineer is required to examine, or cause to be examined, the place where such water is used, if used for irrigation, and must ascertain the area and location of the land irrigated, etc., the capacity of the ditches or canals, etc. Said section also provides that the state engineer on the date set for the final proof, shall receive written statements made by the person or persons submitting such proof, and the affidavits of the witnesses, which statements and affidavits, together with a report of the investigation which he is instructed to make, shall be forwarded at once to the state engineer.

Sec. 8 provides, among other things, that upon the receipt by the state engineer of all the evidence in relation to such final proof, it shall be his duty to carefully examine the same, and if he is satisfied that the law has been fully complied with, and that the water is being used at the place

claimed and for the purpose for which it was originally intended, he shall issue to such user or users a license confirming such use.

Sec. 9 provides, among other things, that such license shall be binding upon the state as to the right of such licensee to use the amount of water mentioned therein, and shall be *prima facie* evidence as to such right.

It will be observed that when said act uses the word "certificate," it applies it to the paper to be issued upon proof of the completion of the works, and when it uses the word "license," it uses that word with reference to the paper to be issued upon proof of application to the beneficial use of the waters.

Sec. 10 of said act is in part as follows:

"Upon the issuance of a certificate by the state engineer in relation to the completion of any canal, ditch or other works constructed under the provisions of this act, a fee, to cover the expense of the examination of such works, shall be paid to the state engineer by the person or persons submitting the proof of such completion. For all ditches or canals having a capacity of ten (10) cubic feet per second or less, such fee shall be (5) five dollars. For all ditches or canals having a capacity of more than ten (10) cubic feet per second, such fee shall be at the rate of thirty (30) cents for each second foot of such capacity."

It will be observed that said sec. 10 provides that upon the issuance of a certificate by the state engineer in relation to the completion of any canal, ditch or other works, constructed under the provisions of this act, a fee to cover the expense of the examination of such works shall be paid to the state engineer by the person or persons submitting the proof of such completion. The state engineer contends under the provisions of said section that he is entitled to collect for the state thirty cents for each second foot of the capacity of said works, while counsel for the plaintiff contends that if he is entitled to collect any fee whatever, it should not exceed five dollars.

The water referred to in this case is intended to be used for generating power and for the production of electricity to be sold, rented or distributed, which is a beneficial use. That being true, it is subject to the regulation and control of the state, and the legislature has regulated the appropriation and diversion of the public waters under the provisions of said act and acts amendatory thereof. The first section is, in part, as follows:

"Sec. 1. For the purpose of regulating the use of the public waters and of establishing by direct means the priority of right to such use, any person, association or corporation hereafter intending to acquire the right to the beneficial use of the waters of any natural streams, . . . . shall, before commencing the construction, enlargement or extension or change in the point of diversion of the ditch, canal or other distributing works, or performing any work in connection with said construction or proposed appropriation or the diversion of any water into a natural channel, make an application to the state engineer for a permit to make such appropriation."

That act clearly contemplates that the state thereby intends to control all public waters that are sought to be put to a beneficial use, and prescribes very minutely the steps that must be taken in order to acquire the right to put any of the public waters of the state to a beneficial use.

It will not be questioned that the use for which the plaintiff has sought to apply the water referred to in his complaint is a beneficial use, but counsel contend that said act contemplates the diversion of such water from the natural channel into a ditch, flume or some other conduit, taking it out of its natural channel, and that unless such water is taken out of its natural channel, the fees directed to be charged in said section 10 cannot be charged by the state engineer under its provisions, and contend that the plaintiff in no manner takes the water that it uses for the purpose of generating power out of the natural channel of said stream. We concede that if no change is made in the flow of said water, that it is not changed from its natural state as it flows

down the stream, that it is not diverted from its natural state; but whenever its natural condition is changed and it is taken from its natural flow in the stream and applied to a beneficial use, the law steps in and provides the procedure and the things to be done and the fees to be paid in perfecting its appropriation. The plaintiff recognizes that, and has complied with the law in making its application for a permit to appropriate 1500 cubic feet of water per second of time, to be applied to a beneficial use, and in constructing its works, and in its application under the law to the state engineer for the certificate of completion provided for by the law. The plaintiff constructed a dam across Snake river at a point near where its power-house is situated, placed its power-house on a rock foundation or small island in the channel of the river, and has placed its penstock or whatever other means it has used for conducting the water from the dam to its water-wheels. It has thus changed the flow of the water; it has diverted it from its usual way of flowing down the stream, and we are clearly of the opinion that under those facts the plaintiff is required to pay the same fees as it would have to pay provided it had diverted from its dam the water used in its works by a ditch or flume and carried it for a distance on the bank of the river and then turned it into its penstock and through that on to its water-wheels and back into the river. The legislature did not intend to exempt from the operations of said· act the person or corporation that placed its power-house in the bed of the stream. While the language of the latter part of the provisions of said section in regard to the fees that shall be charged by the state engineer does not in terms include such works as those involved in this case, the first part of said section clearly does. It reads as follows:

··"Upon the issuance of a certificate by the state engineer in relation to the completion of any canal, ditch or other works constructed under the provisions of this act, a fee, to cover the expense of the examination of such works, shall be paid to the state engineer by the person or persons submitting the proof of such completion."

While the conduit through which the plaintiff conducts the water from its dam to the place of use is not strictly a ditch or a canal, it is a conduit through which the water is diverted from the natural channel in which it would flow if left unobstructed. We do not think the legislature intended to relieve a power company, whose works are situated as are the works of plaintiff, from the payment of any fees, and require a similar corporation which may divert the water from the natural stream, to pay such fee.

Some contention is made that said act of the legislature does not apply to persons who own the land on both sides of the stream and therefore own the bed of the stream, and for that reason a riparian owner is not required to pay the fees provided in said act. There is nothing in that contention, for the reason that by the adoption of our state constitution, all of the unappropriated waters at that time were declared to be public waters, and it matters not through or over whose land they flow. The legislature has full authority to provide the method and procedure of appropriating such waters to a beneficial use by all persons and corporations, whether they be riparian owners or not. The first section of said act, it being sec. 3252, Rev. Codes 1909, is as follows:

"All rights to divert and use the waters of this state for beneficial purposes shall hereafter be acquired and confirmed under the provisions of this chapter. And after the passage of this title, all the waters of this state shall be controlled and administered in the manner herein provided."

If the plaintiff is not subject to the provisions of said act, we do not understand why it is here trying to secure a certificate from the state engineer of the completion of its works. The applicant states that all of the terms of the permit which was granted it for the construction of works and the appropriation of water have been complied with, and that "the water is led to said water-wheel through an opening in said dam." The complaint clearly shows that in order to apply the water sought to be appropriated to a beneficial use, it was necessary to change it from the way that it would naturally flow down said stream, and said act of the legislature was intended to and does cover all such cases.

We therefore hold that the plaintiff must pay the fees provided for by said section 10. The application for the writ of mandate is denied. Costs of this proceeding are awarded to the defendant.

Stewart and Ailshie, JJ., concur.