530 P.2d 924

In the Matter of Permit Application No. 37–7108 in the Name of the State of Idaho Department of Parks (Malad Canyon Springs).

**STATE of Idaho, DEPARTMENT OF PARKS, Respondent,**

Idaho Water Users Association et al., Respondents and Cross Appellants,

v.

**IDAHO DEPARTMENT OF WATER ADMINISTRATION, Appellant and Cross Respondent.**

**No. 11455.**

Supreme Court of Idaho.

Dec. 31, 1974.

Nathan W. Higer, Deputy Atty. Gen., for Department of Water Administration, appellant and cross respondent.

John A. Rosholt, Parry, Robertson, Daly & Larson, Twin Falls, for respondents and cross appellants Idaho Water Users Association, Twin Falls Canal Company and North Side Canal Company.

W. Anthony Park, Atty. Gen., and Matthew J. Mullaney, Deputy Atty. Gen., for respondent Department of Parks.

SHEPARD, Chief Justice.

This is an appeal and a cross-appeal from a judgment of the district court in an action wherein the Idaho Department of Parks, pursuant to statute, sought to appropriate in trust for the people of Idaho cer-

tain unappropriated waters of the Malad Canyon. The case presents for consideration three primary questions:

1. May an agency of the State of Idaho, without express constitutional authority, appropriate waters and obtain a priority water right;

2. Does the appropriation of water for the purposes of recreation and the preservation of scenic views constitute a "beneficial use";

3. In Idaho may there be created a valid appropriative water right in the absence of an actual physical diversion of the water from its natural locus or condition.

In 1971 the Idaho Legislature enacted I.C. § 67–4307.[1] In essence the statute directs the Department of Parks of the State of Idaho to appropriate in trust for the people of Idaho certain unappropriated natural waters of the Malad Canyon in Gooding County, Idaho. Additionally, it declares (1) that the preservation of the waters for scenic beauty and recreation uses is a beneficial use of water; (2) that the public use of those waters is of greater priority than any other use save domestic consumption, and (3) that the unappropriated state land located between the highwater marks on either bank of these waters is to be used and preserved in its present condition as a recreational site for the people of Idaho.

Pursuant to the statute the Idaho Department of Parks filed an application for a permit to appropriate the waters specified by the statute. The waters in question arise in part at least from springs in the canyon and are natural waters. There appears no argument but that there is unappropriated water available for appropriation.

That application was protested by the Idaho Water Users Association, Twin Falls Canal Company, and the North Side Canal Company under the provisions of I.C. § 42–203. Those parties are cross-appellants herein and are hereafter designated "Water Users." The parties stipulated that the answers to the following legal issues were dispositive of the matter.

1. Is it constitutional for an Idaho State agency to appropriate, without express constitutional authorization, the waters of a natural stream, thereby obtaining a water right having priority over water rights on the same stream which may be subsequently appropriated by private parties?

---

1. 67–4307. *Malad Canyon—Appropriation of waters in trust for people—Lands devoted to recreational use.*—The state park board [park and recreation board] is hereby authorized and directed to appropriate in trust for the people of the state of Idaho the unappropriated natural spring flow arising upon the area described as follows, to-wit:

The south half (½) of the southwest quarter (¼), and the south half (½) of the southeast quarter (¼), of section twenty-five (25), township six (6) south, range thirteen (13) east of the Boise Meridian; and

The north half (½) of the northwest quarter (¼), and the northwest quarter (¼) of the northeast quarter (¼), of section thirty-six (36), township six (6) south, range thirteen (13) east of the Boise Meridian.

The preservation of water in the area described for its scenic beauty and recreational purposes necessary and desirable for all citizens of the state of Idaho is hereby declared to be a beneficial use of such water.

No fee shall be required in connection with said appropriation by the state park board [park and recreation board] or the permit issued in connection therewith, but license shall issue at any time upon proof of beneficial use to which said waters are now dedicated.

The park board [park and recreation board], or its successor, shall be deemed to be the holder of such permit, in trust for the people of the state, and the public use of the unappropriated water in the specific area herein described is declared to be of greater priority than any other use except that of domestic consumption.

The unappropriated lands belonging to the state of Idaho between the high water mark on one (1) bank to the high water mark on the opposite bank, of the area described, are hereby declared to be devoted to a public use in connection with the preservation of the area in its present condition as a place of recreation for the citizens of the state of Idaho. [I.C., § 67–4307, as added by 1971, ch. 207, § 1, p. 912].

2. Are the uses described in I.C. § 67–4307 (scenic beauty and recreational purposes) "beneficial uses" which support a water appropriation under the Idaho Constitution?

3. Can there be created in Idaho a valid appropriative water right without an actual physical reduction to possession of the claimed water through an actual diversion of the water from, or artificial control of the water in, the water's natural locus or condition?

The Department of Water Administration issued a decision July 6, 1972 holding that a state agency can lawfully appropriate waters of a natural stream and that recreation and aesthetic uses are beneficial uses of water, but found that in Idaho there can be no valid appropriation of water without at least a proposed physical diversion or reduction of water to possession. Finding that there was no proposed physical diversion or reduction to possession intended on the part of the Department of Parks, the Department of Water Administration refused to issue the permit.

The Department of Parks appealed this decision as to issue 3 to the district court, and the Water Users cross-appealed upon issues 1 and 2. The parties filed motions for summary judgment. The district court held that a valid appropriation can be effected without actual physical diversion or reduction of water to possession and granted the motion of Parks as to issue 3. The motions of the Department of Water Administration and Water Users as to issues 1 and 2 were denied. The Department of Water Administration has appealed the decision of the district court and the Water Users have cross-appealed.

### I.

■ The Water Users are the only parties which assert that the district court erred when it held that a state agency can constitutionally appropriate unappropriated waters of natural streams. The Water Users argue that to allow such an appropriation would eliminate the availability of

that water for appropriation by private parties, thus violating article 15, section 3 of the Idaho Constitution. In pertinent part it is stated therein:

"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied * * *."

Authority for the assertion of the Water Users is not found in the plain language of that constitutional provision since there is no limitation therein to "private parties" as distinguished from the state or a state agency. We deem it common knowledge and it is pointed out in the decision of the Department of Water Administration that in Idaho and throughout the western states, state agencies frequently appropriate water, i. e., the Fish and Game Department appropriates water for pisciculture, state universities appropriate and consume water, the Department of Parks utilizes water to maintain state parks. *See also* 1 W. A. Hutchins, Water Rights Laws in the Nineteen Western States, ch. 7, pp. 250–251 (1971). It is true, as argued, that if a state agency is allowed to appropriate water the quantity of unappropriated water is thereby reduced. Nevertheless, the same is true of any appropriation regardless of the identity of the appropriator. We have not been supplied, nor has our research discovered, any authority from our sister states having constitutional provisions analogous to ours which supports this contention of the Water Users.

· The Water Users assert that their position is supported by State Water Conservation Board v. Enking, 56 Idaho 722, 58 P. 2d 779 (1936). In *Enking* a state statute creating the State Water Conservation Board and defining its duties and powers was declared unconstitutional. We deem the dispositive issue in that case to be that the act in question had in effect created a corporation and was thus invalid under either article 3, section 19, or article 11, section 2 of the Idaho Constitution. In candor, however, we must state that *Enking* contains language supportive of the Water

Users position herein. Nevertheless we deem such language to be arguably dictum and only supportive of the court's conclusion that the Water Conservation Board therein was a corporation. Certain of the language from *Enking*, albeit probably dictum, could be construed to indicate that our constitution imposes an absolute prohibition against the state's appropriating water. The Water Users have adopted this view, asserting that the constitution must be amended prior to state agencies being allowed to appropriate water.

It is our opinion that the fears of the *Enking* court which prompted its construction of article 15, section 3, are totally inapplicable to the case at bar. The court in *Enking* speaks of that Board's power "to appropriate any or all the unappropriated public waters of the state" and "the settler [being] thereby forced to ultimately pay arbitrarily fixed water rates for the use of water." The court in *Enking* also expressed considerable alarm at the Board's authority to "condemn private water rights," to "monopolize" water rights, and to "appropriate and sell the unappropriated waters of the state." In contrast with the situation in *Enking* and the fears of the court expressed therein, I.C. § 67–4307, at issue herein, only authorizes the Department of Parks to appropriate, in trust for the public, certain clearly designated waters for nonconsumptive use. We are of the opinion that the legislature in the instant case has not adopted an insidious scheme in an attempt to monopolize the state's unappropriated waters or to condemn already appropriated waters. Only in a geographical sense can there be said to be any interference with a future private appropriative right since the legislatively authorized use is nonconsumptive and once the waters have left the area delineated by the statute they are and will be subject to routine private appropriation.

We hold that I.C. § 67–4307 does not constitute a disobedience of the constitutional mandate that the "right to divert and appropriate the unappropriated waters * * * to beneficial uses, shall never be de-

nied." The only authority contrary to that holding is the language we determine to be arguably dictum in *Enking*, and to the extent that this opinion is inconsistent with that language we overrule the latter.

## II.

The Water Users also assert error in the trial court's determination that the preservation of aesthetic values and recreational opportunities for the citizens of this state is a beneficial use in the sense that they will support an appropriative water right under the Idaho Constitution.

The foundation of the Water Users' argument is that the five uses specified in article 15, section 3 of the Constitution, i. e., domestic, agriculture, mining, manufacturing and power are exclusive and thus are the only uses that are cognizable beneficial uses under our Constitution. We reject that argument.

We find no support for the position of the Water Users in the discussions reported in II Idaho Constitutional Convention, Proceedings and Debate 1889 (1912), as pertaining to article 15, section 3. It appears that insofar as particular uses were mentioned in the debates, discussion was confined to the establishment of preferences for certain uses over others under certain circumstances. Such establishment of preferences appears to be a common feature of water law in the west. *See* 1 W. A. Hutchins, Water Rights Laws in the Nineteen Western States, *supra*. While it is well established in western water law that an appropriation of water must be made for a "beneficial use," nevertheless in Idaho at least the generic term "beneficial use" has never been judicially or statutorily defined. Our research does not disclose any case in which any court has attempted to define the term "beneficial use." Comment, Water Appropriation for Recreation, I Land and Water Law Review 209, 210 (1966).

Consideration of the statute in question herein indicates clearly that the legislature has declared that "[t]he preservation of

water in the area described for its scenic beauty and recreational purposes necessary and desirable for all citizens of the state * * * is hereby declared to be a beneficial use of such water." We note that numerous other western states have recognized through legislation that utilization of water for scenic or recreational purposes is a beneficial use. 1 W. A. Hutchins, Water Rights Laws in the Nineteen Western States, ch. 8, pp. 542 (1971). Such legislation in other states carries no binding effect on this court but, in the absence of persuasive case law to the contrary, it would appear to indicate that the use of water for providing recreational and aesthetic pleasure represents an emerging recognition in this and other states of social values and benefits from the use of water. *See* Final Report to the President and to the Congress of the United States by the National Water Commission, Ch. 7, sec. E, p. 271 et seq. (1973). The statute in question herein recognizes aesthetic and recreational values and benefits which will accrue to the people of the state in respect to the waters of Malad Canyon. We find no basis upon which to disturb that declaration of the legislature that in this instance those values and benefits constitute "beneficial uses." The decision of the district court upon this issue is affirmed.

### III.

We now reach the final issue as to whether there must be an actual physical diversion of the water in order to support an appropriation. This issue was raised upon appeal by both the Department of Water Administration and the Water Users, both of whom assert error in the trial court's determination that such physical diversion was not necessary.

The precise language of article 15, section 3, does not bear on this question but merely declares "[t]he right to divert and appropriate the unappropriated waters of any natural stream to beneficial use, shall never be denied * * *." Certain language in the late case of Glenn Dale Ranches, Inc. v. Shaub, 94 Idaho 585, 494

P.2d 1029 (1972) and the earlier cases of Sandpoint Water and Light Company v. Panhandle Development Company, 11 Idaho 405, 83 P. 347 (1905), and Hutchinson v. Watson Slough Ditch Co., 16 Idaho 484, 101 P. 1059 (1909) can be read as suggesting that our constitution requires an actual physical diversion of water in order to claim an appropriative right. However, a close reading of those cases indicates that the actual holdings of the cases insofar as they relate to the necessity of an actual physical diversion are based on statutory requirements.

We hold that our Constitution does not require actual physical diversion. We deem it clear that until the time of the enactment of the statute in question herein Idaho's statutory scheme regulating the appropriation of water has contemplated an actual physical diversion. See I.C. § 42–101, 42–201, 42–202. *See however* Comment, The Prerequisite of a Man-Made Diversion in the Appropriation of Water Rights—State ex rel. Reynolds v. Miranda, 83 N.M. 443, 493 P.2d 409 (1972); 13 Natural Resources J. 170 (1973).

We note that the Colorado constitution is similar to Idaho's article 15, section 3, and provides:

> "Diverting unappropriated water * * *—The right to divert the unappropriated waters of any natural stream *to beneficial uses shall never be denied* * * *" Article XVI, sec. 6, Constitution of Colorado.

In Genoa v. Westfall, 141 Colo. 533, 349 P.2d 370 (1960) the Colorado court held that an actual physical diversion was not necessary to a water appropriation so long as the appropriator intends *to apply the* waters to a beneficial use and actually applies them to that use. The rationale of *Genoa* became suspect after the decision of the Colorado court in Lamont v. Riverside Irrigation District, 498 P.2d 1150 (Colo. 1972), but the matter appears to have been now laid at rest following the 1973 Colorado legislation wherein its statutory law of appropriation was amended so as to permit

appropriation without actual diversion. 2 Colorado Session Laws, 1973, ch. 442. Further it does not appear that Colorado courts have relied upon their constitution to establish an actual physical diversion requirement.

An examination of the statutory law of Idaho however reveals a different problem. As a general proposition one must set forth the location and description of a proposed physical diversion of water in an application for a permit to appropriate water. I.C. § 42–202. The Idaho legislature in 1971 made compliance with the statutory permit procedure mandatory. Idaho Session Laws, Ch. 177 (1971); *See* I.C. § 42–103, 42–201.

In the statute before us, I.C. § 67–4307, the Idaho legislature has clearly stated a policy at odds with its previous general statutory scheme of water appropriation. I.C. § 67–4307 directs parks "to appropriate [not 'divert and appropriate'] the unappropriated natural spring flow" of the Malad Canyon and declares the "preservation of water in the area described for its scenic beauty and recreational purposes" is a beneficial use. Furthermore, the statute states that "license shall issue at any time upon proof of beneficial use to which said waters are now dedicated." We deem it clear that the legislature intended no physical diversion of water be required in the appropriation of the subject waters.

It is axiomatic that where a general statute and a specific statute deal with the same subject matter and are in conflict, the provisions of the specific statute must control. State v. Roderick, 85 Idaho 80, 375 P.2d 1005 (1962); State ex rel. Taylor v. Taylor, 58 Idaho 656, 78 P.2d 125 (1938). It is also clear that where two statutes conflict the latest expression of the legislative will must prevail. Employment Security Agency v. Joint Class "A" School District No. 151, 88 Idaho 384, 400 P.2d 377 (1965).

We deem it to be the intent of the Idaho Legislature to dispense with any physical diversion requirement in the case of the appropriation directed in I.C. § 67–4307. Any other construction would nullify the obvious purpose of I.C. § 67–4307. Courts should if possible in construing a statute give it an interpretation which does not in effect nullify the statute. DeRousse v. Higginson, 95 Idaho 173, 505 P.2d 321 (1973).

The judgment of the district court is affirmed and the case is remanded to the Department of Water Administration for further proceedings consistent with the views contained herein. Costs to respondent.

DONALDSON, J., concurs.

BAKES, J., concurs specially in an opinion to follow.

BAKES, Justice (concurring specially):

I concur in the result reached by Chief Justice Shepard in his plurality opinion, although not necessarily everything stated therein. Additionally, I wish to address in a different manner the question of whether or not the preservation of the waters of Malad Canyon in a natural state is a beneficial use that may be appropriated without the means of a diversion. (Parts II and III of that opinion).

The first question to be considered is whether any uses other than the uses referred to in Article 15, § 3, of the Idaho Constitution—domestic, mining, agricultural and manufacturing—can be beneficial uses of water under the Idaho Constitution. This section has remained unchanged since the adoption of the Idaho Constitution except for an amendment late in the 1920's which added language that granted the state the right to regulate water use for power purposes. This amendment was of narrow scope and did not affect the structure of the section. For that reason, I do not believe that the amendment was intended to change any restrictions there may have been in the original section regarding the beneficial uses mentioned therein. Given this, the question becomes, did the draftsmen of the Idaho Constitution intend the priority scheme for

the use of water under Article 15, § 3, for domestic, mining, agricultural and manufacturing purposes to be an exclusive listing of all beneficial uses?

The Idaho Constitution does not explicitly answer this question. The debates preceding the adoption of Article 15, § 3, show that uses were listed so that definite priorities between uses would be elevated to constitutional status. Idaho Constitutional Convention, Proceedings and Debates, Vol. II, pp. 1115–48, 1154–66, 1330, 1331–33, 1340–43, 1350–65 (1889). The debates upon the section do not deal with the matter of whether or not these are the only possible beneficial uses; rather, they simply address themselves to the political question of which uses shall be preferred over the others. Neither the language of the section nor the debates concerning adoption of the section show an intent to limit the uses which may be beneficial uses to those the priorities of which are listed in the section. If the question posed is to be answered, the answer must be based upon considerations not found expressly within the language of the Constitution itself or the constitutional debates.

Article 15 of the Idaho Constitution does not concern itself with abstract notions such as the relationship between the citizenry and their government, but instead concerns itself with the very practical question of water rights. I think we should look to very practical considerations in attempting to construe it. Prior to the time that the Constitution was adopted there were a number of common uses of water which were neither domestic, mining, agricultural nor manufacturing. A community would store water in a tank for use in fighting fires. The operator of a livery stable or a stockyard would water the stock kept there. Logging operations used water both to transport logs and for storage in mill ponds. Communities would use water wagons to settle dust on their dirt streets.[1] The railroad used water for its steam engines and other uses related to the operation of the railroad.[2] All of

---

1. Research has not uncovered a case in which the precise point has been presented of whether or not a use other than one explicitly mentioned in Article 15, § 3, may be a beneficial use, but there are cases in which it has apparently been assumed that such uses are beneficial. In City of Pocatello v. Murray, 206 F. 72 (D.C.Idaho 1913), affirmed 214 F. 214 (C.A.9, 1914), a case interpreting the contract between the City of Pocatello and the operators of its waterworks franchise, the question of the quantity of water which the franchisees were obligated to deliver was at issue. It was said in that case that the uses to which the water was to be put by the municipality included street sprinkling and protection against fire. The franchisees in the case were claiming that they were not obligated to deliver as much water as the City of Pocatello demanded. If it had been in the general contemplation of the law at that time that a city could not appropriate water for settling the dust on its streets or for storage for fighting fires, the franchisees probably would have argued that the city had no right to put the water to all the uses for which it was putting it, and thus the franchisees were under no obligation to deliver as much water as the city demanded. But the opinion reveals no challenge to the city's right to put water to these uses. Thus, it would seem that street sprinkling and fire-fighting were recognized as beneficial uses of water by the parties to that 1913 case, even though they were not mentioned in the Constitution.

2. A review of the transcript in the case of Beus v. City of Soda Springs, 62 Idaho 1, 107 P.2d 151 (1940), reveals that as early as 1902 a district court in Idaho had adjudicated a water right, with a priority date of 1885 (before the adoption of the Idaho Constitution), which was in part to be used for purposes other than those listed in Article 15, § 3. In the Beus case a number of parties were litigating their rights to remove water from Ledge Creek, a small stream near Soda Springs. The Oregon Short Line Railroad Company was made a party to a suit, but all the parties to the suit agreed to the following stipulation with regard to the railroad's rights, as set out in the trial court's Finding of Fact IV:

"It is hereby stipulated [by all the parties] that no controversy exists between the parties with respect to the water right of the Oregon Short Line Railroad Company, and it may be decreed that said Oregon Short Line Railroad Company is the owner and entitled to the use of ⅕ of a cubic foot per second of waters of Ledge Creek . . . with priority date of April 1, 1885, as decreed to it by Decree of Fifth

these uses were undoubtedly considered beneficial, but none of them were domestic, mining, agricultural or manufacturing. I do not believe that by adopting Article 15, § 3, of the Idaho Constitution that it was intended that uses such as these could no longer be considered beneficial uses. On the contrary, the universal expectation must have been that such uses could continue and could be the subject of an appropriation. Many of those uses still continue today, and the changing needs of our society are generating new uses for water which are neither domestic, agricultural, mining nor manufacturing. As an example, many privately owned public swimming pools or health facilities have applied for and received licenses to drill their own wells to supply their water needs. Natural hot water springs have been extensively developed into health resorts, e. g., Lava Hot Springs, upon the assumption that they have obtained a valid right to the use of the water in their facilities. Such uses could not be considered as domestic, mining, agricultural or manufacturing as used in Article 15, § 3, without unduly broadening the definitions of the terms, yet such uses are no doubt beneficial from a societal point of view in that they contribute to the general welfare of the citizenry; and unless a valid water right could be obtained for such a use, not only would society suffer by the loss of such uses, but a great deal of capital which has been invested in reliance upon the validity of a right to such a use for water would be in jeopardy. I therefore conclude that uses other than those enumerated in Article 15, § 3, can be beneficial uses.

The next question is whether the use at issue in this case is beneficial. The uses enumerated by Article 15, § 3, have been raised to the status of beneficial uses by the Constitution, and they will remain beneficial uses so long as the Constitution is unchanged. But we have before us a use for scenic and recreational purposes. Even though the legislature has declared the use to be beneficial, this Court is the final arbiter of the construction of the Idaho Constitution, and therefore we must determine whether or not the scenic and recreational uses in this case are a "beneficial use" within the meaning of Article 15, § 3, of the Constitution. *See* Village of Moyie Springs, Idaho v. Aurora Manufacturing Co., 82 Idaho 337, 353 P.2d 767 (1960).

With the exception of those uses elevated to beneficial status by Article 15, § 3, of the Constitution, the concept of what is or is not a beneficial use must necessarily change with changing conditions. For example, if we were now presented with a question of whether or not using water to operate a public swimming pool, a fountain, or to flood a tract to provide ice for a skating rink were beneficial uses, a good argument could be presented that such uses, although not domestic, mining, agricultural or manufacturing uses, were nevertheless beneficial. But we cannot say that such uses will always be beneficial because conditions might so change that these uses would be an unjustifiable use of water needed for other purposes. The notion of beneficiality of use must include a requirement of reasonableness. With the exception of the uses implicitly declared to be beneficial by Article 15, § 3, there is al-

---

Judicial District Court in and for Bannock County, dated April 6, 1902, [in the case of Wetzel v. Nichols]' and which stipulation is hereby approved and adopted by the court; and which water is for use of said Oregon Short Line Railroad Company for the operation of its trains and for the supply of the depot and stockyards of said railroad company . . . ." (Clk.Tr. pp. 729–730).
All the parties stipulated to the validity of the railroad's appropriation for water for the

operation of its trains, i. e., water for the steam engines' boilers, and for use in watering stock in transit in its stockyard. At least one, and perhaps both of these uses are non-Article 15, § 3, uses. It must have been assumed by the parties to the suit that these appropriations were unassailable, or such a stipulation would not have been entered into. This is further evidence that non-Article 15, § 3, uses were recognized from the territorial times in Idaho and in the early days of statehood and into the 1930's.

**448**

ways a possibility that other uses beneficial in one era will not be in another and *vice versa*. As stated in Tulare Irrig. Dist. v. Lindsay-Strathmore Irrig. Dist., 3 Cal.2d 489, 45 P.2d 972, 1007 (1935):

"What is a beneficial use, of course, depends upon the facts and circumstances of each case. What may be a reasonable beneficial use, where water is present in excess of all needs, would not be a reasonable beneficial use in an area of great scarcity and great need. What is a beneficial use at one time may, because of changed conditions, become a waste of water at a later time."

What we have decided in this case is that the use now before us, although not specifically listed in Article 15, § 3, of the Constitution, is beneficial because, considering today's circumstances, the legislative classification is reasonable based on the record. I would restrict today's holding to the narrow proposition that the use before us is beneficial so long as, and only so long as, the circumstances of water use in the state have not changed to the extent that it is no longer reasonable to continue this use at the expense of more desirable uses for more urgent needs. It should receive the same treatment as all other non-constitutional beneficial uses. The use before us is beneficial when considered in the abstract because a non-consumptive use of water at Malad Canyon to preserve a scenic attraction, both for aesthetic and recreational purposes, is desirable and beneficial, and because the demands upon the water resources of this state are not so severe that this use, which is beneficial when considered alone, becomes unreasonable and not beneficial when considered in conjunction with all of the water resource development needs in the state. This supports the legislative determination that non-consumptive appropriations of water in natural waterways for scenic and recreational purposes, among others, can, under proper circumstances, be a beneficial use; this follows precedents such as similar appropriations by the legislature in 1927 of

the waters of Big Payette Lake, I.C. §§ 67–4301 to 67–4303, and of Priest, Pend Orielle and Coeur d'Alene Lakes, I.C. §§ 67–4304 to 67–4306. Our sister states of Oregon, Texas and California have also provided by statute that water used for recreational purposes is beneficially applied, while New Mexico has reached this result under case law. ORS §§ 536.300(1), 537.170(3)(a), 543.225(3)(a); Tex.Civ.Code Annot., art. 7471 (1970 Supp.); Cal.Water Code § 1243; State ex rel. State Game Commission v. Red River Valley Co., 51 N.Mex. 207, 182 P.2d 421 (N.Mex.1945). The Oregon statutes further provide that use of water to maintain scenic attractions is a beneficial purpose. On this issue I am in agreement with the plurality in this case and with the other states named.

However, in addition to determining whether this is a beneficial use, we must also decide whether or not the Constitution requires that all appropriations be made through the means of a diversion or whether the legislature may, as was done here, provide that an appropriation may be made without a diversion when the beneficial use provided for can be achieved without a diversion. As the plurality opinion points out, there has been no authoritative construction of Article 15, § 3, holding that that section requires a diversion for there to be a valid appropriation; neither does that section of the Constitution explicitly require a diversion for there to be an appropriation. We must again look to other sources for guidance in answering the question.

The common law doctrine of water rights was based upon the riparian system which limited the use of water to the stream, or to lands adjacent to the stream bed and required the water to be returned to the stream's natural drainage, thus preventing any use which effectively diminished or removed the water from the stream channel on a permanent basis. While the riparian system of water use had some support in the early history of

the west,[3] it was soon apparent that the most productive use of water in these arid areas could not be accomplished by limiting the use of water to lands adjoining the stream and in the stream's drainage, and requiring return of the water to the stream from which it was taken at a point on the riparian land upon which it was used, and thus a different system of water rights was necessary. Idaho was one of several western states which by adopting the common law of England in 1864 (1864 Idaho Session Laws, p. 527, § 1), had an early history of riparianism which, first by custom and later in 1881 by territorial legislation (1881 Idaho Session Laws, p. 267, §§ 1–20), was supplanted by the appropriation doctrine. *See* Drake v. Earhart, 2 Idaho 750, 23 P. 541 (1890), note particularly dissent of Berry, J.; Hutchinson v. Watson Slough Ditch Co., 16 Idaho 484, 101 P. 1059 (1909). However, riparian rights were not totally rejected (R.S. §§ 3180–3190 (1887)), but only to the extent that the riparian doctrine conflicted with the doctrine of appropriation. Thus, as recently as 1963, this court, in Weeks v. McKay, 85 Idaho 617, 382 P.2d 788 (1963), held that where both the riparian doctrine and the appropriation doctrine could co-exist, that the riparian doctrine was still in force in Idaho. In that case, a downstream appropriator sued to enjoin the maintenance of a dam by an upstream riparian owner. The Court held that while the riparian upstream owner could not interfere with the natural flow of the stream to which the downstream appropriator was entitled under his appropriative water right, nevertheless the downstream appropriator could not require the riparian owner to release water impounded in his dam so long as the natural flow was not interfered with.

As I view Article 15, § 3, of the Constitution, which guarantees "[t]he right to divert and appropriate the unappropriated waters of any natural stream to beneficial use . . ." the use of the word "divert" in that section by the Constitutional Convention in 1890 was a constitutional recognition of the supremacy of the prior appropriation doctrine with its concomitant right to remove waters from the stream bed and not return them, over the riparian system which would in effect require water to remain in the stream. In my view the use of the word "divert" was not used with the intention by the framers of the Constitution that no appropriative water right could be obtained without a diversion, but was inserted to guarantee the right of an appropriator to remove the water from the stream and consume it in a beneficial use and not return it. In summary, the word "divert" in Article 15, § 3, was used to mandate the supremacy of the prior appropriation doctrine over the riparian system and not to constitutionally limit the manner in which a prior appropriator could obtain his water right.

Where an appropriative water right does not require a diversion to make it effective and beneficial, in the absence of a statute requiring a diversion there appears to be no practical reason why a diversion should be required. As an example, in a case in which a scenic waterfall had produced a mist which caused unusual growth of attractive vegetation, it was said, "If nature accomplishes a result which is recognized and utilized, a change of process by man would seem unnecessary," and, "Undoubtedly a landowner may rely upon an efficient application by nature, and need do no more than affirmatively to avail himself of it; . . ." Empire Water & Power Co. v. Cascade Town Co., 205 F. 123 (8 Cir. 1913). In Steptoe Livestock Co. v. Gulley, 295 P. 772 (Nev.1931), in a case in which cattle were watered in a natural stream, it was said that "we are not with-

3. 1 Hutchins, Water Rights Laws in the Nineteen Western States, pp. 130–225; *see* Union Mill & Mining Co. v. Dangberg, 81 F. 73 (C.C.D.Nev.1897); Drake v. Earhart, 2 Idaho 750, 23 P. 541 (Berry, J., dissenting) (1890); Smith v. Denniff, 24 Mont. 20, 60 P. 398 (1900); Vansickle v. Haines, 7 Nev. 249 (1872).

out authority to support the view that to constitute an appropriation where the statutes require no use of artificial means of diverting water, or where no diversion was required, that such appropriation might be made independent of both or either diversion or the use of artificial means in perfecting such appropriation." 295 P. at 775. *See also* Stevenson v. Steele, 93 Idaho 4, 453 P.2d 819 (1969). I find these decisions to be persuasive for the contention that a diversion is not constitutionally necessary for an appropriation. If a beneficial use can be made of the water in its natural channel, Article 15, § 3, should not require the superfluous effort of construction of a diversion as a precondition for obtaining an appropriation. However, in an appropriation without a diversion, the right acquired is not to the stream flow as was the case under the riparian system, but to the use of a specific amount of water which is the subject of the right.[4] That amount must be a reasonable and efficient use of the water. Glavin v. Salmon River Canal Co., Ltd., 44 Idaho 583, 258 P. 532 (1927); Union Grain & Elevator Co. v. McCammon Ditch Co., 41 Idaho 216, 240 P. 443 (1925).

Appellant Water Users argue that even if the constitution does not require a diversion, nevertheless the statutes relating to appropriations of water do. Regardless of the requirements of the general appropriations statutes, I concur with Chief Justice

Shepard's conclusion that the clear import of I.C. § 67–407 is to dispense with any physical diversion requirement.

The district court order granting a summary judgment reversing the decision of the Department of Water Administration in denying permit application # 37–7108, should be affirmed.

DONALDSON, J., concurs.

McQUADE, Justice (dissenting).

I join in the dissent of Justice McFadden, but feel compelled to address myself to an issue which was not passed upon in his dissent. I do not agree with the majority's position that there may be created a valid appropriative water right in the absence of an actual physical diversion of the water from its natural locus or condition.

A diversion is generally required in order to perfect water rights by appropriation.[1] Hutchins in his treatise on water rights in the western states[2] quotes with approval the following language from a California case,

"To constitute a valid appropriation of water, three elements must always exist: (1) An intent to apply it to some existing or contemplated beneficial use; (2) an *actual diversion from the natural channel by some mode sufficient for the purpose*; and (3) an application of the water within a reasonable time to some

4. With regard to the Malad Canyon appropriation, I.C. § 67–4312 provides:

"*67–4312. Permits for appropriation under sections 67–4307—67–4311.*—The permits for the waters described in this act shall be issued upon the determination by the director of water administration of the historical water flow and he shall issue a permit for only that amount. Any future appropriation of the waters specifically described in this act that are granted above the flow limits set by the director shall not involve any diversion that shall detract from or interfere with the geological interpretive value, historical significance, or the scenic attraction for public use under the administration of the state park board [park and recreation board] of the stream from the natural high water mark on one

(1) bank to the natural high water mark on the opposite bank, or of the springs specifically described as they arise upon the lands listed in this act.

"The state park board [park and recreation board] shall apply first for those permits for water arising upon land which, at the time of enactment, the board administers, controls, or owns."

1. See S. Wiel, Water Rights in the Western States §§ 364–367 (3rd ed. 1911); Hutchins, Background and Modern Developments in State Water-Rights Law, in 1 Waters and Water Rights § 20.3, § 22.2 (R. Clark ed. 1967).

2. Hutchins, Water Rights Laws in the Nineteen Western States, Vol. 1, p. 366 (1971).

beneficial use. . . ." [Emphasis added]

This Hutchins concludes, expresses the consensus of the western judiciary, not only when the opinion was written but currently.[3]

I believe the diversion requirement is clear from the statutory and constitutional language of this state. The majority opinion concedes that up until the time of the enactment of I.C. § 67–4307 in 1971, ". . . Idaho's statutory scheme regulating the appropriation of water has contemplated an actual physical diversion." The opinion suggests that in 1971 when I.C. § 67–4307 was enacted, the Legislature made a turnabout, and stated a policy at odds with its previous general statutory scheme of water appropriation. I do not agree with this interpretation. I am not conviced that in enacting I.C. § 67–4307, the Legislature intended to abrogate a long standing requirement that a physical diversion be coupled with an intent to apply the water for a beneficial use before an appropriative right would be recognized.

In the same year I.C. § 67–4307 was enacted, I.C. § 42–103 was amended to read in pertinent part:

"The right to the use of the unappropriated waters . . . within this state *shall hereafter be acquired only by appropriation under the application, permit and license procedures as provided for in this title, unless hereinafter in this title excepted.*" [Emphasis added]

The application, permit and licensing procedures for the appropriation of water all encompass a physical diversion.[4] There has not been brought to our attention any exception to the application, permit and licensing requirements of I.C. § 42–103. I.C. § 67–4307 requires that a permit and license be issued in connection with these waters.

Article 15, sec. 3 of the Idaho Constitution reads in pertinent part,

"The right to divert *and* appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied, except that the state may regulate and limit the use thereof for power purposes." [Emphasis added]

It is significant that the conjunctive was used when the Constitution was written, i. e., divert *and* appropriate rather than the disjunctive, i. e., divert *or* appropriate. In the absence of any contrary evidence, we should presume that the framers of the Idaho Constitution chose the conjunctive deliberately and that they intended it be accorded its ordinary meaning.

Finally, the constitutional underpinning of the diversion requirement has been recognized by this Court in past decisions. In Glenn Dale Ranches, Inc. v. Shaub,[5] this Court in passing upon appellant's charge that respondent failed to prove its prior appropriative right stated,

"Indeed, the record fails to show that respondent's predecessor in interest actually diverted the water in question and put it to beneficial use. Absent such a showing, respondent can not claim rights by appropriation antedating its ownership of the property."

The majority opinion is incorrect when it concludes that the actual holding in that case insofar as it relates to the necessity of an actual physical diversion was based on

---

3. *Id.* There is language in opinions of our sister states where the courts expressed the view that a diversion is necessary to support an appropriation. While this authority is not binding upon us, it is certainly persuasive as indicative of the thought in this area. See State of New Mexico ex rel. Reynolds v. Miranda, 83 N.M. 443, 493 P.2d 409 (1972); Gates v. Settlers' Milling, Canal & Reservoir Co., 19 Okl. 83, 91 P. 856 (1907); Sherlock v. Greaves, 106 Mont. 206, 76 P.2d 87 (1938);

Crawford v. Lehi Irrigation Company, 10 Utah 2d 165, 350 P.2d 147 (1960); McPhail v. Forney, 4 Wyo. 556, 35 P. 773 (1894); Hutchinson v. Stricklin, 146 Or. 285, 28 P.2d 225 (1933); Clough v. Wing, 2 Ariz. 371, 17 P. 453 (1888).

4. See I.C. §§ 42–101, 42–201 et seq.

5. 94 Idaho 585, 587, 494 P.2d 1029, 1031 (1972).

statutory requirements. A careful scrutiny of that case indicates that the Court was relying upon the Idaho Constitution, art. 15, sec. 3 to establish and substantiate the diversion requirement.[6]

McFADDEN, Justice (dissenting).

Article 15, section 3 of the Idaho Constitution in pertinent part provides that:

"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, *shall never be denied,* except that the state may regulate and limit the use thereof for power purposes." (Emphasis added.)

In my view, the so-called "appropriation" authorized by I.C. § 67–4307 constitutes a denial of the constitutional right to appropriate the unappropriated waters of the Malad Canyon Springs.

I recognize that the state, acting in its proprietary capacity, may appropriate water without offending Article 15, section 3; but as in the case of private appropriators, the state's appropriative right depends upon the application of water to a "beneficial use." In this case, however, the state agency is directed to hold unappropriated waters "in trust for the people of the state" for "scenic beauty and recreational purposes." I.C. § 67–4307. If the state were to hold unappropriated waters in trust for these purposes, it certainly would not be acting in a proprietary capacity; it would be doing nothing more than it already had a duty to do in its sovereign capacity. Poole v. Olaveson, 82 Idaho 496, 502, 356 P.2d 61 (1960); Walbridge v. Robinson, 22 Idaho 236, 241–242, 125 P. 812 (1912); Idaho Power & Trans. Co. v. Stephenson, 16 Idaho 418, 429, 101 P. 821 (1909); Hutchins, The Idaho Law of Water Rights, 5 Idaho L.Rev. 1, 3 (1968). As the court stated in *Walbridge:*

"[T]he title to the public waters of the state is vested in the state for the use and benefit of all the citizens of the state * * *. This is not, however, an interest or title in the proprietary sense, but rather in the sovereign capacity *as representative of all the people for the purpose of guaranteeing that the common rights of all shall be equally protected* and that no one shall be denied his proper use and benefit of this common necessity." 22 Idaho at 241–242, 125 P. at 814 (emphasis added).

In water law, the verb "appropriate" means to acquire a right to use "public water." See Boise Irrigation & Land Co. v. Stewart, 10 Idaho 38, 49, 77 P. 25 (1904); Lake Shore Duck Club v. Lake View Duck Club, 50 Utah 76, 166 P. 309, 310–311 (1917); Hutchens, The Idaho Law of Water Rights, 5 Idaho L.Rev. 1, 7 (1968); Hutchins, Selected Problems in the Law of Water Rights in the West, U.S. Dept. of Agriculture Misc.Pub. No. 418 (1942). An appropriation may be made for "private" beneficial use or for "public" beneficial use. Boise Irrigation & Land Co., *supra,* 10 Idaho at 48–49, 77 P. 25. However, if the state in its sovereign capacity already has the right to use "public water" for a certain beneficial use, it obviously cannot "acquire" that right—in other words, the state cannot "appropriate" water in such a case, because it cannot "acquire" a right that it already has. *See* State ex rel. State Game Comm. v. Red River Valley Co., 51 N.M. 207, 182 P.2d 421, 432 (1945). In my view, the in-stream use of a natural stream for recreational purposes and for scenic beauty is a public beneficial use which inheres in the state's sovereign ownership of such water. Therefore, since the state already has the right to so use the water, it cannot acquire the right to "appropriate" the water for these purposes.

Moreover, this purported "appropriation" is objectionable on grounds much more weighty than mere logical inconsistency.

6. *Id.* fn. 6. *See also* Sandpoint Water & Light Co. v. Panhandle Development Co., 11 Idaho 405, 413, 83 P. 347, 349 (1905); Neilson v. Parker, 19 Idaho 727, 730–731, 115 P. 488, 489 (1911); Hutchinson v. Watson Slough Ditch Co., 16 Idaho 484, 493, 101 P. 1059, 1063 (1909); Cantlin v. Carter, 88 Idaho 179, 186, 397 P.2d 761, 765 (1964); Jones v. McIntire, 60 Idaho 338, 352–353, 91 P.2d 373, 379 (1939); Hutchins, The Idaho Law of Water Rights, 5 Idaho L.Rev. 1, 20–21 (1968).

Under Article 15, section 3 of the Idaho Constitution, water held by the state in its sovereign capacity—even though being beneficially used by the general public—is subject to being appropriated for specific private (or proprietary) beneficial uses. Thus, in-stream public use of unappropriated water for recreational purposes and for scenic beauty is subject to diminution by the exercise of the constitutional right to appropriate water for private (or proprietary) beneficial uses. State ex rel. State Game Comm. v. Red River Valley Co., *supra*. The type of "appropriation" authorized here was recognized for what it really is by the author of the following excerpt:

> "In Oregon * * * many streams that form beautiful falls or that are famous fishing waters have been reserved from appropriation. In Idaho the governor is authorized to appropriate the water of certain lakes in trust for the people, and the preservation of the lakes for scenic beauty, health, and recreation purposes is declared to be a beneficial use of the water [citing I.C. §§ 67–4301, 4304], although *in reality this is not an appropriation, but* like the Oregon laws *a reservation of the water to prevent its bring appropriated for more mundane purposes.*" Trelease, *The Concept of Reasonable Beneficial Use in the Law of Surface Streams,* 12 Wyo.L.J. 1, 12 (1956) (emphasis added].

Such a reservation by the state of unappropriated waters is completely unauthorized by our Constitution. Unlike the constitutions of some other western states, Idaho's Constitution does not provide that the right to appropriate "shall never be denied *except when such denial is demanded by the public interest.*" [1] Our Constitution provides that the right to appropriate unappropriated waters *"shall never be denied, except* that the state may regulate and limit the use thereof *for power purposes."* Art. 15, sec. 3, Idaho Const. (emphasis added). The Idaho provision makes an exception only for power purposes—not for the demands of the public interest (and not for the purposes of recreation and scenic beauty). To allow the state to in effect reserve water from appropriation in furtherance of non-proprietary, non-power purposes—when the framers of the Constitution contemplated that private beneficial users could appropriate water being held by the state in its sovereign capacity—amounts to nothing less than a denial of the constitutional right to appropriate the "unappropriated waters" of any natural stream. "In other words, the state cannot by legislative act authorize its own agency to *monopolize or withdraw the very rights that section 3 of article 15 of the Constitution says 'shall never be denied' the people of the state.*" State Water Conservation Bd. v. Enking, 56 Idaho 722, 732, 58 P.2d 779, 783 (1936). The proper means to authorize such a withdrawal (or "appropriation") is to amend the Constitution to so provide.

It is beyond dispute that scenic beauty and recreation are both of vital importance to modern day life in Idaho. But this does not ipso facto mean the state has the right to promote these beneficial ends by withdrawing waters from appropriation, given the guarantee contained in the Idaho Constitution. I note, however, that the effect of a proposed appropriation upon scenic beauty and recreation can and should be considered in determining whether the use contemplated is "beneficial" within the meaning of the Constitution. Comment, Water Appropriation for Recreation, 1 Land & Water L.Rev. 209, 221 (1966). In other words, where the benefits of a proposed use are outweighed by the attendant detriment to scenic beauty and recreation, the use is not a "beneficial use," and the application for a permit to appropriate public waters for that use should be denied. As always, the question of beneficial use must be determined on a case by case

---

1. Neb.Const. art. XV, § 6; *see also* Wyo. Const. art. 8, § 3 ("No appropriation shall be denied except when such denial is demanded by the public interests").

basis, since the benefits of a particular proposed appropriation may outweigh the detriment to recreation and scenic beauty. Whether a use of water is "beneficial" is a question of fact to be resolved upon a consideration of the circumstances present in a particular case. City & County of Denver v. Sheriff, 105 Colo. 193, 96 P.2d 836, 842 (1939). As stated in Tulare Irrig. Dist. v. Lindsay-Strathmore Irrig. Dist., 3 Cal.2d 489, 45 P.2d 972, 1007 (1935):

> "What is beneficial use, of course, depends upon the facts and circumstances of each case. What may be a reasonable beneficial use, where water is present in excess of all needs, would not be a reasonable beneficial use in an area of great scarcity and great need. What is a beneficial use at one time may, because of changed conditions, become a waste of water at a later time."

In conclusion, although I believe that recreation and scenic beauty can and should be taken into consideration on a case by case basis, they cannot be used as an excuse to deny all future appropriation of water for other purposes, at least until the Constitution is amended.